UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE GERO,<br><br>                Plaintiff<br><br>        v.<br><br>UNITED STATES GOVERNMENT,<br><br>                Defendant. | Case No. 16-cv-04449-JSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE AS MOOT** |

Plaintiff Bruce W. Gero, representing himself, brings this medical malpractice action against the United States, alleging that the Department of Veterans Affairs ("VA") failed to properly diagnose and treat his knee injury.  Now before the Court is Defendant's motion to dismiss.  (Dkt. No. 15.)  Defendant, the United States, moves to dismiss Plaintiff's complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the statute of limitations has run and bars Plaintiff's claims and that, in any event, Plaintiff fails to state a claim upon which relief can be granted.  In the alternative, Defendant moves to strike portions of the complaint.  As set forth below, the Court GRANTS Defendant's motion to dismiss in part with leave to amend and DENIES the motion to strike as moot.  While Defendant has not shown that its statute of limitations affirmative defense succeeds as a matter of law, Plaintiff must amend his complaint to conform to the Federal Rules of Civil Procedure by including the facts alleged in the actual complaint and numbering the complaint paragraphs.  Further, any amended complaint should clearly identify the injury for which Plaintiff sues, as well as when and what providers he alleges should have diagnosed his medical injury.

//

//

**BACKGROUND**

## I.    Complaint Allegations and Judicially Noticeable Documents

The complaint is somewhat difficult to follow, as it cites a number of documents, jumps back and forth between describing Plaintiff's current claims and earlier administrative ones, and fails to comply with Rule 10(b)'s requirement that complaints be written in numbered paragraphs and Rule 8(a)'s mandate that complaints include a short and plain statement of the claim.  Fed. R. Civ. P. 8(a), 10(b).  Nevertheless, the following background attempts to synthesize the factual allegations, documents attached thereto, and judicially noticeable documents.[1]

In 2006, Plaintiff had a total knee replacement on his left knee at the San Francisco VA Medical Center.  (Dkt. No. 1 at 8.)  Following that surgery, in May 2007 Plaintiff filed an administrative tort claim against the VA, alleging that the VA orthopedics department "improperly evaluated and failed to inform [him] of the consequences of the restricted motion" of the surgery, negligently chose the prosthetic used in the surgery, and failed to recognize the range-of-motion problems of the chosen prosthetic.  (*See id.*; *see also* Dkt. No. 16-2 at 5-6.)  The VA denied this

---

[1] On a 12(b)(6) motion, the court's consideration of extra-pleading materials is limited.  Normally, the court cannot consider matters outside of the pleadings without converting the motion into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(b)(6); *see also Ramirez v. United Airlines, Inc.*, 416 F. Supp. 2d 792, 795 (N.D. Cal. Dec. 23, 2005) ("[M]aterials outside the pleadings ordinarily are not considered on a motion to dismiss.").  But the court may take judicial notice of matters of public record, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010), including "records and reports of administrative bodies."  *Mack v. So. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) (citation omitted).  In certain contexts, courts can consider an agency's administrative record even if the documents are not referenced in the complaint where their authenticity is not in question.  *See Lacayo v. Donahoe*, No. 14–cv–04077–JSC, 2015 WL 993448, at *10 (N.D. Cal. Mar. 4, 2015) (collecting cases).  Defendant has submitted a declaration of Bruce M. Wight, the VA's Oakland Regional Office Privacy Officer, describing the administrative record of Plaintiff's medical malpractice claim and attaching the documents.  (Dkt. No. 16.)  These are all records from an administrative body, and Plaintiff has not challenged their authenticity.  While Defendant attached the documents as exhibits to a declaration instead of submitting a request for judicial notice, the Court construes it as a judicial notice request.  Thus, the Court will consider the documents attached to the Wight Declaration, which are part of the VA's administrative record of Plaintiff's compensation claim relating to his knee injury.  In doing so, the Court only notices the existence of the administrative record and does not credit the truth of any fact recounted or matter asserted in the documents.  *See Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1070 (2010).

United States District Court
Northern District of California

claim.  (Dkt. No. 1 at 8-9, 23.)  Also in 2007, following his knee replacement, Plaintiff hurt the same knee while working in a Compensated Work Therapy program ("CWT") through the VA. (Dkt. No. 1 at 3, 7.)  Plaintiff filed an application for service-connected compensation under 38 U.S.C section 1151 related to that injury.  (Dkt. No. 16-3.)  He sought disability compensation for his "bilateral knees and left leg condition as a result of [his] participation in [the CWT] program[.]"  (*Id.* at 3.)  Specifically, Plaintiff alleged "the VA failed to acknowledge, properly analyze, and treat an injury sustained during the CWT" and as a result he can no longer safely use stairs or sit and stand without discomfort.  (*Id.*; *see also* Dkt. No. 16-4 at 2) (describing the application as arising out of an injury sustained while working in the CWT program).)  The VA received this benefits claim in September 2007.  (Dkt. No. 16-1.)

In connection with the benefits claim, Plaintiff submitted a letter further documenting his injuries, in which he noted that "[a]t some point in time, with [his] total left knee still deteriorating, [he] will need a proper analysis as to what happened to it and why it failed."  (Dkt. No. 16-2 at 2.)  In the letter, he alleged that "working in the CWT Program . . . is what took out the new knee."  (*Id.*)  Later in 2007, Plaintiff explained that "at that point in time . . . [he] didn't know what had caused the knee to fail or how to prevent it from degenerating further" and only later after doctors appointments and online research has he "determined the cause of this injury[,]" which was that his "prosthetics [sic] limited flexion could not work in tandem with the fused knee."  (Dkt. No. 16-4 at 2.)  Finally, in September 2008, the Board of Veterans' Appeals issued a decision denying Plaintiff's request for benefits, noting that it lacked jurisdiction over Plaintiff's administrative claim because the agency had not yet adjudicated his request, and remanding the benefits request to the agency for determination.  (Dkt. No. 16-5.)

While the benefits application was pending, Plaintiff filed another administrative tort claim in 2008 arising out of his 2007 CWT injury.  (Dkt. No. 1 at 10.)  Specifically, Plaintiff alleged that the VA breached the standard of care in performing his CWT pre-employment physical, thereby clearing Plaintiff for work he was not able to perform.  (*See id.*)  The VA denied this administrative claim, as well.  (Dkt. No. 1 at 10-11.)

In the meantime, Plaintiff continued to seek medical treatment for his knee issues.  No doctor recommended further knee surgery until December 2014, when Plaintiff visited St. Mary's Medical Center and a treating physician noted that there was a "possibly bony impingement" on Plaintiff's left knee.  (*Id.* at 17.)  In December 2015, following a bone scan, Plaintiff's physician wrote that he was "showing increased uptake in the patella"—*i.e.*, more growth in the joint—which had increased from 2007.  (*Id.* at 19.)  The orthopedic surgery staff at St. Mary's recommended knee surgery, which Plaintiff underwent in September 2015.  (*Id.* at 19-21.)  In a postoperative report, physicians noted that the surgery had removed scar tissue and "a large area" of bony growth in Plaintiff's knee joint.  (*Id.* at 24-25.)

As a result of this information, Plaintiff now alleges that around the time he reported pain to the VA in 2007, radiology images indicated that a bone spur was growing on his knee.  (Dkt. No. 1 at 13.)  The bone spur grew over the next 8 years and could be seen in radiology images. (*Id.* at 14.)  By 2015, the bone spur had grown larger.  (*Id.* at 15.)  Had the VA physicians looked at Plaintiff's x-rays or listened to Plaintiff, they would have discovered the bone spur.  (*Id.* at 15-16.)

On February 24, 2015, Plaintiff filed an administrative claim with the VA for failure to diagnose and treat his "knee injury that left [him] in a physically compromised position from April of 2007 up until [his] knee was surgically repaired on September 11, 2015."  (*Id.* at 3.)  He alleges that the 2015 claim did not allege the same torts as his 2007 and 2008 administrative tort claims, which focused not on the failure to diagnose and treat the knee injury but the breach of the standard of care during his right total knee replacement, and an improper physical during the CWT pre-employment process.  (*Id.* at 3.)  The VA, however, identified Plaintiff's 2015 claim as "the injury that [he] sustained in the CWT program" in 2007.  (Dkt. No. 1 at 7.)  The VA denied the claim on the grounds that it was time-barred and there was "no evidence in the medical record that [his] trial of CWT resulted in any permanent damage or injury."  (*Id.*)

Plaintiff filed for administrative reconsideration.  (*See* Dkt. No. 1 at 12.)  When the agency failed to act on that request, Plaintiff initiated this action on August 8, 2016.  (Dkt. No. 1.)  He alleges a "failure to properly diagnose and treat [his] knee injury."  (*Id.* at 3.)  Plaintiff appears to

4

1    allege that the VA should have recognized Plaintiff had a bone spur/growth in January 2007 while

2    he was working in the CWT and ground his patella, or kneecap, down at that time.  Had the VA

3    performed this procedure in 2007, it would have saved him eight years of pain and discomfort

4    from 2007 to 2015 when he finally underwent the surgery.  The complaint does not expressly

5    allege that Plaintiff is bringing suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§

6    1346(b)(1), 2401(b), 2679 (1976), but because he is alleging medical malpractice against the

7    United States government, and in light of his pro se status, the Court construes it as such.[2]

8    **II.      Facts Alleged in Connection with the Motion to Dismiss**

9             In support of his opposition to Defendant's motion, Plaintiff submitted a declaration

10   attaching additional documents, and in his opposition he alleges a number of new facts.  (Dkt. No.

11   22; Dkt. No. 21 at 4-6.)  The additional documents mainly consist of medical records that detail

12   Plaintiff's medical history, which medical professionals he visited, and the dates he visited them.

13   (Dkt. No. 22; Dkt. No. 21 at 4-6.)  Plaintiff also attached a number of documents that contain

14   pictures of his x-rays with his own comments and conclusions regarding what they show.  (Dkt.

15   No. 22 & Ex. K.)  According to Plaintiff's opposition, he first sought private treatment outside the

16   VA in May 2007 from Dr. Thomas Grotz.  (Dkt. No. 21 at 3; Dkt. No. 22 at 5-11.)  Dr. Grotz

17   recommended multiple treatment options including exercise, medication, and a joint replacement

18   procedure.  (Dkt. No. 21 at 3.)  Plaintiff "did not have access to the resources necessary to follow

19   through with the procedure so it was put on hold."  (*Id*.)  According to Plaintiff, he submitted Dr.

20   Grotz's report to the orthopedic staff at the VA who disagreed with his findings.  (*Id*.)

21            In September 2007, Plaintiff sought treatment from San Francisco General Hospital.  (Dkt.

22   No. 21 at 3; Dkt. No. 22 at 13-15.)  The doctors there advised Plaintiff that surgery would be in

23   order, but, for unknown reasons, the VA did not permit it.  (Dkt. No. 21 at 3.)  From 2008 to

24   October 2011, Plaintiff consulted seven different providers— both affiliated and not affiliated with

25

26

27   _____

     [2] Plaintiff states that this case is in federal court on the grounds of diversity jurisdiction.  (Dkt. No.
28   1 at 2.)  Given that Plaintiff's claims arise under the FTCA, the Court notes that its jurisdiction is
     instead grounded in a federal question. 28 U.S.C.A. § 1331.

United States District Court
Northern District of California

1    the VA—seeking information about the cause of, and possible treatment options for, his

2    continuing knee discomfort.  (Dkt. No. 21 at 4-5; Dkt. No 22 at 17-49.)

3         The remaining records reflect Plaintiff's continued hospital visits due to knee pain;

4    although various physicians at the VA and elsewhere examined Plaintiff, none identified the bone

5    spur growing on his knee.  (*See* Dkt. No. 21 at 5-6; Dkt. No. 22 at 50-67.)  Plaintiff alleges for the

6    first time in his opposition that in December 2014 he met with Dr. Hubert Kim of the VA who

7    informed him that his "patella was chafing [his] femoral component and that [he] should get it

8    repaired if he had a doctor [he] could trust."  (Dkt. No. 21 at 5-6.)  In April 2015, Plaintiff met

9    with Dr. Matthew Lilly who essentially reiterated this finding and entered it into Plaintiff's

10   medical record for the first time.  (*Id*.)  Finally, in October 2015 Plaintiff was speaking with a

11   physical therapist, trying to articulate the specifics of his injury for his reply brief in support of his

12   administrative appeal of the benefits claim denial.  (*Id*. at 7.)  The physical therapist explained to

13   Plaintiff "how patella tilt and compression worked and how it had been compressing the bone spur

14   on [his] patella into [his] soft tissue."  (*Id*.)  In Plaintiff's own words, he did not understand until

15   this conversation that the bone spur was the cause of his injury.  (*See id*. at 7) ("THIS IS WHEN

16   THE FINAL PIECE OF THE PUZZLE FELL INTO PLACE.  I now knew exactly how and why

17   this happened along with a competent understanding of the language needed to articulate it." )

18   (emphasis in original).)

19        Plaintiff also alleges for the first time in his opposition that he "sustained a major

20   additional injury that required a revision to repair because the VA's orthopedic department failed

21   to perform a simple arthroscopic, (minimally invasive), procedure to repair [his] original injury,

22   (the patella and femoral component impaction injury / bone spur)."  (Dkt. No. 21 at 11.)  He

23   alleges that he "lost significant flection as a result of that revision which has significantly

24   increased [his] vulnerability to additional injury."  (*Id*.; *see* Dkt. No. 22 at 54-67.)  Plaintiff further

25   alleges for the first time in his opposition that Defendant committed fraud by concealment because

26   numerous VA medical professionals failed to note Plaintiff's bone spur in his medical records

27   from 2007 to 2015.  (*Id*. at 7.)  Because of this fraud, he could not have discovered that Defendant

28   committed malpractice at an earlier date.  (*Id*.)

**DISCUSSION**

## I.   Motion to Dismiss

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds Plaintiff's claim is barred by the statute of limitations found in 28 U.S.C. § 2401 and, in any event, fails to state a claim.

### A.   Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). On a 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts may base dismissal "on either lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

Courts hold pro se pleadings to a more lenient standard. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). In *Hebbe v. Pliler*, the Ninth Circuit held that courts must still liberally construe pro se filings post-Iqbal noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." 627 F.3d 338, 342 (9th Cir. 2010) (internal quotations and citations omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

United States District Court
Northern District of California

United States District Court
Northern District of California

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).

### B.    Extra-Complaint Materials

As a threshold matter, the Court must decide what materials it will consider in deciding Defendant's motion to dismiss.  In deciding a 12(b)(6) motion, the court will generally only consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  In addition to the facts alleged in the complaint, additional materials for the Court's consideration include the documents Plaintiff attached to the complaint, the declaration of Charles Wight and supporting documents submitted in support of Defendant's motion, and Plaintiff's declaration and the documents attached thereto submitted in support of his opposition.  The Court will consider the complaint allegations and documents that are part of the administrative record of Plaintiff's claims before the VA.  *See supra*, footnote 1.  However, the Court will not consider the myriad facts alleged, medical records and correspondence submitted for the first time in Plaintiff's opposition in deciding whether the complaint states a claim; only in determining whether to grant Plaintiff leave to amend.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (citation omitted); *Monzon v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 923, 943 (2011).  A plaintiff cannot avoid dismissal by alleging new facts in an opposition to a motion to dismiss.  *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) (finding that "'new' allegations contained in the [plaintiff]'s opposition motion . . . are irrelevant for Rule 12(b)(6) purposes.").  Thus, the Court will consider Plaintiff's new facts and documents solely to determine whether to grant leave to amend.

### C.    Statute of Limitations

The FTCA statute of limitations requires an individual to present his claim to the United States within two years after the claim accrues.  28 U.S.C. § 2401(b).  Defendant contends that Plaintiff's claim accrued in 2007 and thus is time-barred.

### 1. **Burden of Proof**

As Defendant conceded at oral argument, in an FTCA action the statute of limitations is an affirmative defense upon which it bears the burden of proof.[3] *Saofaigaalii v. U.S*, No. 14-00455 SOM/KSC, 2016 WL 3527095, at *6 (D. Haw. June 23, 2016). Accordingly, to prevail on its motion Defendant must show that "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995) (citation omitted).

### 2. **FTCA Legal Framework**

The FTCA is the exclusive remedy for filing a tort action against a federal agency or officer. *See* 28 U.S.C. § 2679; *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (per curiam). To bring a claim under the FTCA, a plaintiff must present an administrative tort claim to the appropriate federal agency within two years after the claim accrues:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). Such claim is "presented" when the federal agency receives it. *Wages v. United States*, No. 5:14-cv-04328-HRL, 2015 WL 3809414, at *2 (N.D. Cal. June 18, 2015) (citing *Bailey v. United States*, 642 F.2d 344, 346-47 (9th Cir. 1981)). The substantive law governing a plaintiff's FTCA claim is the "law of the place where the act or omission occurred."

---

[3] Prior to the United States Supreme Court's decision in *U.S. v. Kwai Fun Wong*, 135 S.Ct. 1625 (2015), most circuits, including the Ninth Circuit, held that plaintiff had the burden to prove compliance with section 2401(b) in order for the Court to have jurisdiction. *See Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980) (administrative claim presentation is jurisdictional prerequisite to bringing of suit under FTCA and as such, should be affirmatively alleged in complaint; district court may dismiss complaint for failure to allege such jurisdictional prerequisite). In *Wong*, the Supreme Court held that section 2401(b) is not jurisdictional. 135 S.Ct. at 1638. Accordingly, as with other non-jurisdictional statute of limitations, it is an affirmative defense which the defendant must plead and prove. *See Saofaigaalii v. U.S*, No. 14-00455 SOM/KSC, 2016 WL 3527095, at *6 (D. Haw. June 23, 2016); *see also Schmidt v. U.S.*, 933 F.2d 639, 640 (8th Cir. 1991) ("Because the FTCA's statute of limitations is not jurisdictional, failure to comply with it is merely an affirmative defense which the defendant has the burden of establishing."); *Hughes v. U.S.*, 263 F.3d 272, 278 (3d Cir. 2001).

United States District Court
Northern District of California

1    28 U.S.C. § 1346(b)(1).  Plaintiff alleges that the actions at issue took place in California, so

2    California law governs his medical malpractice claims.  *See Littlejohn v. United States*, 321 F.3d

3    915, 924 (9th Cir. 2003).

4           Federal law applies to determine when the statutory clock begins.  *Bartleson v. United*

5    *States*, 96 F.3d 1270, 1276 (9th Cir. 1996); *see also TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th

6    Cir. 1999).  For purposes of determining when a claim accrues, the Ninth Circuit follows the

7    "discovery rule," which states that a claim accrues when the plaintiff learns, or, in the exercise of

8    reasonable diligence should have learned, of his injury and of the actions that caused it.  *United*

9    *States v. Kubrick*, 444 U.S. 111, 123-24 (1979); *see also TwoRivers*, 174 F.3d at 991-92.

10          However, the discovery rule in failure-to-diagnose cases is slightly different.  Where a

11   medical professional does not affirmatively act and the injury is less apparent, the discovery rule

12   has been regarded as "unduly harsh[.]"  *Davis v. United States*, 642 F.2d 328, 330 (9th Cir. 1981).

13   Accordingly, the Ninth Circuit has modified the discovery rule in cases specifically involving "a

14   physician's failure to diagnose, treat, or warn a patient result[ing] in the development of a more

15   serious medical problem than that which previously existed" because the "identification of both

16   the injury and its cause may be more difficult for a patient than if affirmative conduct by a doctor

17   inflicts a new injury."  *Augustine v. United States*, 704 F.2d 1074, 1078 (1983); *accord McGraw v.*

18   *United States*, 281 F.3d 997, 1003 (9th Cir. 2002), *as amended*, 298 F.3d 754 (9th Cir. 2002).[4]

19   Thus, for FTCA failure-to-diagnose claims, a plaintiff "does not 'discover' the claim until he not

20   only is aware—or through the exercise of reasonable diligence, should have become aware—of

21   the existence of a pre-existing condition, but also learns that the condition has transformed into a

22   more serious ailment."[5]  *McGraw*, 281 F.3d at 999.

23   //

24   //

25   //

26

27   [4] *McGraw* pre-dated the Supreme Court's clarification in *Wong* that the FTCA's two-year
     presentment requirement is not jurisdictional in nature and therefore considered accrual of a

28   failure-to-diagnose claim under Rule 12(b)(1).  281 F.3d at 999.

United States District Court
Northern District of California

**3.** *Whether the Statute of Limitations Bars Plaintiff's Claim*

Because Plaintiff's claim involves a number of knee issues and multiple administrative claims, the first step in determining whether his claim is time-barred involves determining which injury his current claim encompasses.

Plaintiff appears to allege that the injury at issue is the worsening of his knee condition due to the VA's ongoing failure to diagnose and treat his bone spur between 2007 and 2015.  This is arguably different from the injuries Plaintiff knew about and alleged in earlier administrative complaints.  His 2007 and 2008 administrative tort claims alleged negligence in connection with his 2006 knee replacement and challenged the VA's pre-employment physical connected with the CWT program, respectively.  (Dkt. No. 1 at 8; Dkt. No. 1 at 10.)  His 2007 benefits claim, which is still pending, challenged the VA's treatment of his CWT-related injury.  (Dkt. No. 16-3 at 3; Dkt. No. 16-5.)  In contrast, the injury at the center of his 2015 administrative tort claim and this suit is "failure to diagnose and treat [his] injury, [and] leaving [him] to suffer for at that time was around 8 years."  (Dkt. No. 1 at 3; Dkt. No. 1 at 12.)  While both the 2007 benefits claim and Plaintiff's current 2015 claim arise from Plaintiff's knee injury, the 2007 benefits claim refers to an injury Plaintiff sustained while in the CWT program (Dkt. No. 16-3 at 3; Dkt. No. 16-5), while the current claim instead arises from the VA's failure to diagnose Plaintiff's bone spur causing his knee condition to worsen.  Thus, drawing inferences in Plaintiff's favor, the statute of limitations did not begin to run until Plaintiff was aware, or reasonably should have become aware, that his bone growth had developed into a more serious problem.  *Augustine*, 704 F.2d at 1078; *accord McGraw*, 281 F.3d at 1003.

Although Plaintiff documents his bone spur in exhibits attached to his complaint (Dkt. No. 1 at 13-15), it is unclear, looking only at the complaint and judicially-noticeable documents, first, when Plaintiff discovered his bone growth, and; second, when he discovered it was developing into a more serious problem.  Medical records attached to Plaintiff's complaint mention the growth in December 2014 (Dkt. No. 1 at 17) (orthopedic record discussing a "possible bony impingement"), and indicate it was worsening in December 2015 (orthopedic record stating Plaintiff's "bone scan . . . showing increased uptake in the patella"), but Plaintiff does not clearly

United States District Court
Northern District of California

allege when he discovered the bone growth or when he discovered that it was the cause of his worsening knee condition.  However, Defendant has not established beyond a doubt that Plaintiff discovered the bone spur, or his worsening condition, more than two years before he presented the claim to the VA in 2015.  Thus, Defendant has not met its burden of showing at this early stage that it is entitled to judgment on its statute of limitations defense as a matter of law.

### D.    Sufficiency of the Allegations

To state a claim for medical malpractice, a plaintiff must allege: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."  *Gami v. Mullikin Med. Ctr.*, 18 Cal. App. 4th 870, 877 (1993) (citation omitted).

Looking exclusively at the four corners of Plaintiff's complaint and the judicially noticeable documents attached thereto, Plaintiff fails to allege a claim for medical malpractice. The complaint alleges that the VA "failed to properly diagnose and treat a knee injury that left me in a physically compromised position from April of 2007 up until my knee was surgically repaired on September 11, 2015[.]"  (Dkt. No. 1 at 3.)  It is not enough to claim an untreated injury without also alleging the other essential elements of a medical malpractice claim—*i.e.* Plaintiff must allege that Defendant owed him a duty; that Defendant subsequently breached this duty through an act or omission; that the breach proximately caused Plaintiff's injury; and Plaintiff sustained actual damage.  *See Gami*, 18 Cal. App. 4th at 877.  The complaint does not do so.

In the complaint and the additional documents Plaintiff submits with his opposition, he recounts numerous conversations and office visits with both VA and non-VA providers over an eight-year period.  It is unclear from the foregoing which of these medical providers owed him a duty, and if so, which acts or omissions constituted a breach of that duty.  *See Frazee v. Marin Cnty. Jail*, No. 14–cv–01590–JSC, 2015 WL 1249804, at *6 (dismissing medical malpractice negligence claims where the complaint "refers to medical personnel generally, but fails to plead

any specific acts taken by a medical provider"). In any event, much of this information was not provided with the complaint.

Accordingly, Defendant's motion to dismiss is granted with leave to amend. In his amended complaint, Plaintiff should name as a defendant the United States, the only proper defendant in an FTCA action. *See Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995); *see also Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984). Further, the complaint's allegations shall be set forth in numbered paragraphs. *See* Fed. R. Civ. P. 10(b). The complaint itself should also clearly identify the injury for which he seeks relief, as well as when he contends the VA medical personnel should have diagnosed and treated the injury, and the basis for his belief that they should have diagnosed and treated the injury earlier. Finally, Plaintiff cannot seek a jury trial because claims brought under the FTCA require a bench trial. 28 U.S.C. § 2402; 32 CFR § 750.32. Accordingly, the Court dismisses his request for a jury trial.

## II.    Motion to Strike

In the alternative, Defendant moves to strike Plaintiff's demand for a jury trial and his description of the Defendant on page 2, lines 4-7 of the complaint as "Robert A McDonald, Secretary of Veterans Affairs." (Dkt. No. 1 at 2.) Given that the Court has dismissed Plaintiff's complaint, the motion to strike is moot.

## CONCLUSION

The Court GRANTS Defendant's motion to dismiss with leave to amend and DENIES Defendant's motion to strike as moot. As the Court has referred Plaintiff for appointment of pro bono counsel to represent him in a settlement conference (Dkt. No. 25), he need not file his amended complaint until further order of the Court. As the Court stated at the motion hearing, once counsel is appointed the Court intends to refer the parties to a magistrate judge for a settlement conference. This Order disposes of Dkt. No. 15.

IT IS SO ORDERED.

Dated: February 10, 2017

*Jacqueline Scott Corley*

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRUCE GERO,

              Plaintiff,

      v.

UNITED STATES GOVERNMENT,

           Defendant.

Case No.  16-cv-04449-JSC

**CERTIFICATE OF SERVICE**

       I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

       That on February 10, 2017, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Bruce  Gero
255 Dorland Street #418
San Francisco, CA 94114

Dated: February 10, 2017

Susan Y. Soong
Clerk, United States District Court

By: *Lisa R. Clark*
LISA R. CLARK, Deputy Clerk to the
Honorable JACQUELINE SCOTT CORLEY